IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MCS INDUSTRIES, INC.** | : | |
| 2280 Newlins Mill Road | : | **CIVIL ACTION** |
| Easton, Pennsylvania 18045 | : | |
| | : | Case No. 5:22-cv-03436-JLS |
| *Plaintiff* | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| **AT HOME STORES LLC** | : | |
| 1600 East Plano Parkway | : | |
| Plano, Texas 75074 | : | |
| | : | |
| -and- | : | |
| | : | |
| **AT HOME PROCUREMENT INC.** | : | |
| 1600 East Plano Parkway | : | |
| Plano, Texas 75074 | : | |
| | : | |
| *Defendants* | : | |
| | : | |

**PLAINTIFF MCS INDUSTRIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER AND
INJUNCTIVE RELIEF PURSUANT TO FED.R.CIV.P. 65**

Plaintiff MCS Industries, Inc. ("MCS"), by its undersigned counsel Bochetto & Lentz, P.C., respectfully submits this Memorandum of Law in support of its Motion for a Temporary Restraining Order to be entered against Defendants At Home Stores LLC and At Home Procurement Inc. (collectively, "At Home").

I.    **SUMMARY**

This Court should grant Plaintiff's request for a temporary restraining order because the complained of infringing activity is causing immediate and irreparable harm that cannot be adequately compensated by money damages. Plaintiff, MCS, is a Pennsylvania based corporation that owns a portfolio of patents covering over-the-door mirrors and over-the-door hanging

apparatus, including United States Patent No. 9,480,350, United States Patent No. 9,801,478, United States Patent No. 10,835,061, and United States Patent No. 8,534,627 (collectively, "the Patents-in-Suit").  Defendant, At Home is nationwide retailer whose business includes selling, offeringfor sale, and/or importing into Pennsylvania, and elsewhere within the United States, a variety of consumer products, including home décor and furniture.

On or about August 18, 2022, MCS discovered that At Home was selling over-the-door mirrors in their retail store that infringe on the Plaintiff's above referenced Patents-in-Suit (the "Infringing Product").[1] MCS promptly began an investigation with its patent counsel to determine the next course of action to protect its rights. MCS's investigation has confirmed that the Infringing Product infringes the Patents-in-Suit and has caused MCS and its licensees significant harm because At Home is selling theInfringing Product at a reduced price point compared to what MCS's customers charge for the same product. Importantly, At Home's product is a identical to one or more structural embodiments of the invention disclosed in MCS's Patents-in-Suit. However, MCS does not supply At Home with the Infringing Product nor has At Home sought or obtained a license to sell the Infringing Product.

On August 26, 2022, MCS filed the instant lawsuit against At Home and immediately thereafter provided written notice of its intent to file this Motion for Temporary Restraining Order to stop At Home from selling the Infringing Product. Importantly, this is not the first time At Home has been notified of patent infringement for MCS' mirrors. Just last year MCS notified At Home that it was selling a different, but similar, mirror that was infringing on other MCS' patents. Accordingly, At Home was made expressly aware of MCS' patents covering over-the-door

---

[1] At Home sells the Infringing Product under a variety of shapes, sizes, and prices, both in their retail stores and online. As detailed in Plaintiff's Complaint, MCS purchased several Infringing Products from At Home's retail store located in Whitehall, Pennsylvania.

mirrors. Despite this, MCS recently learned that At Home is now selling the Infringing Product and violating the patent rights involved in this case, in complete disregard of MCS' patents.

For all of these reasons, MCS was forced to file the instant motion for emergency temporary restraining order and injunctive relief. Indeed, At Home's willful and continued infringement of MCS' patents requires immediate judicial intervention in order to stop the ongoing harm being caused to MCS.

MCS seeks injunctive relief on an emergent basis as it is likely to succeed on the merits, and it will be irreparably harmed if At Home is not enjoined. Moreover, because the balance of equities and public interest weigh in favor of MCS, this Court should grant MCS's request for temporary injunctive relief as it addresses the merits of the parties' dispute.

## II.    FACTUAL BACKGROUND

MCS owns a portfolio of patents covering over-the-door mirrors and over-the-door hanging apparatus, including the Patents-in-Suit. (*See* Plaintiff's Verified Complaint, attached hereto as **Exhibit "B"** and incorporated by reference, at ¶ 8.) MCS is in the business of designing, developing, manufacturing, and selling frames and other hanging products, including an over-the-door mirror that embodies one or more of the inventions claimed in the Patents-in-Suit. **[Compl., at ¶ 14.]** MCS's over-the-door mirror is a signature product and MCS has invested substantial resources in developing the mirror and protecting it. **[Compl., at ¶ 14.]** MCS generates revenue by manufacturing and selling over-the-door mirrors in accordance with the inventions claimed in the Patents-in-Suit to large retailers.

At Home is a large retailer whose main business includes selling consumer products throughout the United States. At Home sells its products through its retail stores located throughout the United States, as well as online at https://www.athome.com/. Between at least August 18, 2022

and the present, At Home sold the Infringing Product in its retail stores.[2] Additionally, At Home Sells the Infringing Product online, offering in-store pickup and home delivery options to its customers.  At Home's conduct is especially harmful because the primary sales season for the Infringing Product is the 'back to school' buying period which runs from Week 28 - 36. With each day that goes by during this time period, MCS sustains further harm to its business reputation and its patent rights.

As evidenced by the claim charts attached to Plaintiff's Verified Complaint, At Home's Infringing Product is ***virtually identical*** to one or more structural embodiments exemplified in the Patents-in-Suit and clearly infringes the claims of the Patents-in-Suit. **[Compl., at Ex. F-I]**  The similarity is well beyond anything that could be considered mere coincidence.

Importantly, At Home's unlawful  conduct in selling the infringing product  is causing irreparable harm to Plaintiff. At Home has further eroded the market price for over-the-door mirrors that are covered by MCS's patents, including those set forth in the Patents-in-Suit. Moreover, over-the-door mirrors, such as the Infringing Product, are "back-to-school" items that are heavily marketed during the late summer/early fall retail season to individuals going away to college and decorating their dorm rooms. At Home's sale of the Infringing Product during the back-to-school season has and continues to result in lost sales for MCS's and its lawful customers and licensees. Moreover, At Home's widespread national sales of the Infringing Product is and will continue to cause MCS irreparable harm, in the form of price erosion, loss of goodwill, damage to reputation, and loss of business opportunities.  Accordingly, because MCS will be irreparably harmed, MCS seeks that this Court grant MCS's request for temporary injunctive relief

---

[2] In addition to purchasing the Infringing Product from At Home's retail store in Whitehall, Pennsylvania, MCS has also purchased the Infringing Product from At Home's retail store located in Geneva, Illinois. Based upon this evidence, MCS believes that the Infringing Product is being in At Home retail stores throughout the United States.

as it addresses the merits of the parties' dispute.

### III.    LEGAL ARGUMENT

#### 1.    Legal Standard

The grant of a preliminary injunction pursuant to 35 U.S.C. § 283 is within the discretion of the district court. *See Curtiss–Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1378 (Fed. Cir. 2006). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). Further, the standard for grant of a temporary restraining order ("TRO") "is the same as that for issuing a preliminary injunction. *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012).

Plaintiff's Verified Complaint establishes that Plaintiff is entitled to a preliminary injunction as the proof of patent infringement is clear in this case.

#### 2.    Plaintiff is Likely to Succeed on the Merits

Plaintiff, MCS, is likely to succeed on the merits because the grant of a patent comes with a statutory presumption of validity under 35 U.S.C. § 282 and because the Infringing Product being sold by At Home is ***virtually identical*** to the product disclosed in one or more embodiments of and claimed in the Patents-in-Suit. A basic review of the claim chart's side-by-side comparison between the Infringing Product and the claims of the Patents-in-Suit **(Exhibits F-I to Plaintiff's Verified Complaint)** makes it clear that the Infringing Product is covered by and reads on the claims of the Patents-in-Suit. The Infringing Product is also substantially similar to at least one of the embodiments disclosed in the Patents-in-Suit, indicating that the Infringing Product was likely

copied from the specifications of the Patents-in-Suit. **(See, Patents-in-Suit attached to Plaintiff's Verified Complaint as Exhibits A-D)**. Moreover, Michael Pyle – an inventor of the Patents-in-Suit United States Patent No. 10,959,546 of the Patents-in-Suit – has reviewed the Infringing Product and has submitted an affidavit attesting that the Infringing Product violates Plaintiff's rights in the Patents-in-Suit.  **(*See* Affidavit of Michael Pyle attached hereto as Exhibit "A.")**

The Federal Circuit has held that "the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likelywithstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009) (citation omitted).

### A.    Likelihood of Infringement

Turning first to the likelihood of proving infringement of the Patents-in-Suit by the Infringing Product, Plaintiff respectfully asserts that there is essentially no reasonable non-infringement argument that could be presented by At Home. It is easily and readily determined that the Infringing Product is covered by the claims set forth in the Patents-in-Suit.  Indeed, as set forth in the claim charts attached to the Verified Complaint as **Exhibit F-I**, the Infringing Product infringes at least United States Patent No. 10,835,061 (Claim 12), United States Patent No. 9,801,478 (Claim 12), U.S. Patent No. 9,480,350 (Claim 20), and United States Patent No. 8,534,627 (Claim 1) (collectively "Claims-At-Issue").  It is worth noting that the Infringing Product infringes additional claims not mapped in the claim chart, which is intended to be exemplary only and is not an exhaustive showing of all claims of the Patents-in-Suit that are infringed by the Infringing Product.

The first step in a patent infringement analysis is to interpret the claims to determine their proper scope and meaning.  *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d

1322, 1326 (Fed. Cir. 2006); *J&M Corp. et al. v. Harley Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001). Once the claims have been interpreted, the properly interpreted claims are applied to the accused device or process by the trier of fact. *Wilson Sporting Goods,* 442 F.3d at 1326. If it is determined that an accused device or process contains each and every limitation of a claim, either expressly or inherently, that device or process will literally infringe that claim. *See Atofina v. Great Lakes Chem. Corp.,* 441 F.3d 991, 999 (Fed. Cir. 2006). Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device; that is, when the properly construed claim reads on the accused device exactly. *See AmhilEnter. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996).

The starting point in claim interpretation is the language of the claim itself. *Bell Commc'ns Res., Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995).In the instant case, the language of the claims of the Patents-in-Suit is simple and straight forward and, thus, should be given its plain and ordinary meaning. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313, (Fed. Cir. 2005) (words of a patent claim are given their ordinary meaning as they would be understood by one of ordinary skill in the art at the time of invention). A basic review of the claim charts provided in **Exhibits F-I** to Plaintiff's Verified Complaint exemplifies the simple and ordinary meaning of the language of the claims of the Patents-in-Suit,and how the claims of the Patents-in-Suit unequivocally read on the Infringing Product.[3]

In a preliminary injunction context, a court may, in exercising its discretion, decide to interpret the claim conclusively. *Boehringer Ingelheim Animal Health, Inc. v. Schering-Plough*

---

[3] Moreover, even if this Court determined that certain terms of the claims of the Patents-in-Suit had to be construed during a *Markman* hearing, the Infringing Product would be covered by even the narrowest of claim constructions because the Infringing Product is extremely similar to one or more of the structural embodiments of the invention exemplified in the specification of at least one of the Patents-in-Suit.

*Corp.*, 984 F.Supp. 239, 245 (D.N.J. 1997), *citing Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.*, 74F.3d 1216 (Fed. Cir.1996) (Although "the trial court has no obligation to interpret [a claim] conclusively and finally during a preliminary injunction proceeding. [It] may exercise its discretion to interpret claims at a time when the parties have presented a full picture of the claimed invention.")  MCS is respectfully asking this Court to exercise its discretion and to preserve its rights pending this litigation as the side-by-side comparison between the Infringing Product and the claims of the Patents-in-Suit, as set forth in **Exhibits F-I** to the complaint, leave no doubt that the At Home product is infringing said claims.

While there are many canons of claim construction, all canons of claim construction are founded on the basic tenant that claim construction is performed in the context of the entire patent, including the specification and the prosecution history. *See Phillips*, 415 F.3d at 1312-1317; *Atofina*, 441 F.3d at 996; *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d1331, 1337-1338 (Fed. Cir. 2006) (noting the dominance of the specification and prosecution. history in understanding the scope and defining the limits of claims); *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996) ("[A] claim interpretation that would exclude the inventor's device is rarely the correct interpretation; such an interpretation requires highly persuasive evidentiary support, whereas in this case it received none, whether from the specification, the prosecution history, or the prior art."); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1369 (Fed. Cir. 2003) ("This court has held that construing a claim to exclude a preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support."); *Hoechst Celanese Corp. v. BP Chem. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) ("We share the district court's view thatit is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the

specification in such a way.")

In the present case, the specifications of the Patents-in-Suit disclose, as exemplary embodiments of the claimed inventions, an over-the-door mirror that is essentially identical to the Infringing Product. Moreover, there is no prosecution history for the Patent-in-Suit that would narrow the claims in any way that would provide At Home with an argument for non-infringement. Thus, even under the narrowest of constructions, there is no way for the claims of the Patents-in-Suit to be construed in a manner that would not cover the Infringing Product.

For completeness, Plaintiff notes that the Infringing Product includes each and every element of and, thus unequivocally infringes, at least the Claims-at-Issue identified of the Patent-in-Suit. No reasonable argument can be presented that the Infringing Product does not infringe the Claims-at Issue, nor could any proper claim construction be rendered that would negate or put into question infringement of the Patents-in-Suit by the Infringing Product.

### B.    Validity of the Patents-in-Suit

"[A]n issued patent comes with a statutory presumption of validity under 35 U.S.C. § 282." *Titan Tire Corp.*, 566 F.3d, at 1376. When raised at the preliminary injunction stage, "the patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation." *Id*., at 1377. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent … satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id*. "If, instead, the alleged infringer responds to the preliminary injunction motion by launching an attack on the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity, just as it would be at trial." *Id*. Notably, if the alleged infringer attacks the patent's validity at the preliminary injunction stage, "the trial court does not resolve the validity question, but rather must

9

… make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *Id*. (internal quotes omitted). In considering the evidence available at an early stage of litigation, the Court "must determine whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Id*., at 1380.

Here, Plaintiff was issued the '061 Patent on November 17, 2020, the '478 Patent on October 31, 2017, the '350 Patent on November 1, 2016, and the '627 Patent on September 17, 2013. **(See, Patents-in-Suit attached to Plaintiff's Verified Complaint as Exhibits A-D)**. Plaintiff has been diligent in complying with its duties of disclosure with the United States Patent & Trademark Office and knows of no basis for Defendant to challenge the validity of Plaintiff's patents based on prior art or otherwise. Moreover, Plaintiff has successfully enforced these same patents on multiple occasions and no other party has successfully challenged the validity of the Patents-in-Suit. Rather such third-parties have respected the Patents-in-Suit and expeditiously ceased supplying and/or selling products that infringe the Patents-in-Suit.

Furthermore, Plaintiff notes that due to the egregious nature of the infringement and copying of the inventions of the Patents-in-Suit in the instant case, the Infringing Product not only infringes the broad independent claims of the Patent-in-Suit but also infringes some very detailed and narrow dependent claims of the Patents-in-Suit. Thus, even if the Defendant were to uncover some obscure "never-found-before" piece of prior art during invalidity contentions, it is extremely unlikely that any such piece of prior art would invalidate all of the Claims-at-Issue.

Accordingly, Plaintiff enjoys a presumption of validity at this stage of the pleadings and it is likely that Plaintiff will succeed on the merits at trial.

**3.**    **Unless Injunctive Relief is Granted, Prohibiting Defendants from Marketing and Selling the Infringing Product, Plaintiff Will Suffer Irreparable Harm**

Plaintiff has and will continue to suffer irreparable harm, in the form of price erosion, loss of goodwill, damage to reputation, and loss of business opportunities, if this Court does not grant injunctive relief prohibiting Defendants from marketing and selling the Infringing Product.

"[T]he simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm. *Id.* (*citing Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008); *Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382–83 (Fed. Cir. 2006). Courts have regularly found that a preliminary injunction is necessary to prevent irreparable harm in the form of loss of revenues, loss of reputation, and loss of goodwill. *See Bio–Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir.), *cert. denied*, 519 U.S. 911, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996) (holding that the district court did not err in finding that plaintiff would suffer irreparable harm by way of "los[t] revenues and goodwill"); *Genentech, Inc. v. Novo Nordisk A/S*, 935 F.Supp. 260, 280–83 (S.D.N.Y. 1996), *rev'd on other grounds*, 108 F.3d 1361, 1368 (Fed.Cir.1997) (concluding that loss of goodwill and revenue constitute irreparable harm). Moreover, courts have found that a selling an infringing product at a ***significant discount*** constitutes price erosion which is indicative of irreparable harm. *See Curlin Med. Inc. v. Acta Med.*, LLC, 228 F. Supp. 3d 355, 362 (D.N.J. 2017).  As noted by the Court in *Curlin*:

> Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers

11

to pay higher prices after years of paying lower prices to infringers is not a reliable business option.

*Id.* At 362.

Here, a temporary restraining order is necessary, as not only does the presence of At Home "change the marketplace" as noted in *Curlin*, but given the seasonal nature of the product that change – i.e. price erosion – is occurring on an extremely compressed timeline.  The over-the-door mirror is a product that MCS supplies to large retailers. Importantly, because the mirror is a dorm room "back-to-school" item, thereis a short timespan (between Week 28 – 36) that accounts for a significant portion of the mirror's annual sales. Permitting At Home to continue to retail the mirror will cause significant price erosion and decreased revenues for MCS and its licensees.

Moreover, At Home's infringing conduct is causing irreparable harm to MCS's reputation and goodwill with its licensees. If At Home is permitted to continue marketing and selling the mirror, it will cause MCS' retailers to cease licensing and selling MCS' product. Moreover, if At Home is not immediately enjoined, it will harm MCS's reputation and goodwill as it may cause customers who purchase/license numerous products from MCS to cease doing business with MCS, resulting in a tremendous loss of revenue. The loss of reputation and goodwill with large retailers is a harm that is almost impossible to calculate and cannot be adequately compensated by monetary damages.  Accordingly, permitting At Home to continue to infringe on the Patents-in-Suit by marketing and selling the Infringing Product will cause irreparable harm to MCS in the form of price erosion, loss of revenue, loss of reputation and loss of goodwill.

### 4.      The Balance of Equities Tips in Plaintiff's Favor

The balance of equities (or harms) tips in MCS's favor as it is a small local company, and the infringer is a conglomerate who does not focus its business on mirror products at all.  As noted above, this is the **second time** that At Home has infringed Plaintiff's patents in relation to over-

the-door mirrors. At Home has not had to incur the expenses associated with product development and market establishment as did MCS. Rather, At Home desires to step in now and bear the fruits of years of MCS's labor.  It is inequitable that MCS's lawful customers/licensees are forced to compete with an infringing retailer that is selling the product at the licensees' cost. Moreover, At Home will not be significantly harmed as they are a national retailer that sells a wide variety of home décor and furniture, and the over-the-door mirror is a non-core offering that At Home sells. Further, At Home cannot argue harm because it took the risk of retailing an infringing product with full knowledge on MCS' patents covering over-the-door mirrors.

In evaluating the balance of equities, "[t]he district court must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Courts look at several factors when balancing equities. "In instances where the patent owner will suffer diminution in the value of its patent, the balance of hardships weighs in the owner's favor." *Everett Labs., Inc. v. Breckenridge Pharm., Inc.*, 573 F. Supp. 2d 855, 870 (D.N.J. 2008), dismissed, 363 F. App'x 743 (Fed. Cir. 2009). "[R]equiring a patentee to 'compete against its own patented invention ... places a substantial hardship' on the patentee," *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2522, 195 L. Ed. 2d 844 (2016). Importantly, courts are reluctant to find harm attributable to an infringer's own risky conduct.  "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed.Cir.1986); s*ee also Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 n. 9 (Fed.Cir.2006) (affirming the district court's balance of the hardships in favor of the plaintiff,

13

reasoning that "[Defendant's] harms were 'almost entirely preventable' and were the result of its own calculated risk to launch its product…").

Here, MCS is severely harmed by its lawful customers/licensees having to compete with an infringing product which is undercutting the lawful customers/licensees. Moreover, because MCS does not retail the over-the-door mirror themselves, they rely on customers/licensees to generate revenue. If At Home is permitted to continue marketing and selling the mirror, MCS stands the risk of its customers/licensees terminating their business relationships with MCS. At Home, on the other hand, is not similarly harmed. At Home is a national retailer that offers a broad range of home décor and furnishing products.[4]  As a result, the mirror is not a core offering, does not make up a significant portion of At Home's, and is most likely only being offered as a seasonal back-to-school item. Moreover, any harm alleged by At Home was almost entirely preventable by At Home, who was expressly notified of MCS' patents covering over-the-door mirrors in 2021.

Accordingly, the balance of equities (or hardships) weighs in MCS's favor and supports a preliminary injunction, while this matter is resolved on the merits.

### 5.    Injunctive Relief is in the Public Interest

Public interest would be best served by protecting and enforcing MCS's rights to its patent, and would not be injured by the grant of preliminary relief while this Court resolves themerits of MCS's claim against At Home.

Federal courts have "long acknowledged the importance of the patent system in encouraging innovation." *Sanofi–Synthelabo*, 470 F.3d at 1386. "Indeed, the 'encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'" *Id.* (*quoting Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed.Cir. 1985)).

---

[4] For a detailed review of At Home's broad product inventory, visit their website at https://www.athome.com/.

In a case for patent infringement, "although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech*, 849 F.2d at 1458.

Here, MCS has been granted the Patents-in-Suit and as a result, it serves the public interest to encourage innovation and further the purpose of the patent grant, by excluding At Home. Moreover, unlike many patent infringement cases arising out of disputes about medicinal and drug patents, the public will not be harmed by the removal of At Home's infringing product from the marketplace while this Court reviews the merits of the dispute. Accordingly, the public interest factor either weighs in MCS's favor, or is neutral, supporting the grant of a preliminary injunction.

## IV.    CONCLUSION

For the reasons set forth above, this Court should find that Plaintiff MCS is likely to succeed on the merits and will be irreparably harmed if Defendant At Home is not enjoined from marketing and selling the Infringing Product until this litigation is resolved. Further, as set forth fully above, the balance of equities and the public interest factor both weigh in Plaintiff's favor. Accordingly, this Court should grant Plaintiff's motion for a temporary restraining order, enjoining Defendant from marketing and selling the Infringing Product until this litigation is resolved.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Date: August 29, 2022

By: *      /s/ Gavin P. Lentz      *
_____
Gavin P. Lentz, Esquire (53609)
Kean C. Maynard, Esquire (327794)
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

15

glentz@bochettoandlentz.com
kmaynard@bochettoandlentz.com
*Attorneys for Plaintiff*

16